ORIGINAL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

TAREQUE AHMED,

              Plaintiff(s)

v.

NEW YORK MOTOR GROUP, LLC; ;
SANTANDER USA HOLDINGS, INC.,
SANTANDER BANK; MAMDOH EL
TOUBY; JULIO ESTRADA (a/k/a JAY
TORRES, a/k/a JOHN DeSANTOS), JOHN
DOE IDENTIFIED AS "ALEX," and
JOHN/JANE DOES,

              Defendant(s)

---

**ORIGINAL COMPLAINT AND
DEMAND FOR JURY TRIAL**

CV 15 - 0284

Index No.

BLOOM, M.J.

2015 JAN 20 PM 12:01
U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK
FILED
CLERK

Plaintiff, Tareque Ahmed ("Mr. Ahmed"), brings suit against Defendant New York Motor Group, LLC ("New York Motor Group," "NYMG," or "seller"), Santander USA Holdings, Inc., Santander Bank, Mamdoh El Touby, Julio Estrada (a/k/a Jay Torres, a/k/a John DeSantos) and the individuals, and John Does for violating the Truth in Lending Act ("TILA"), 15 USC § 1601, *et seq.*; the Uniform Commercial Code, the New York General Business Law; and, related common law claims of fraud, breach of contract, criminal threats, and harassment.

## A.      JURISDICTION AND VENUE

1.    The Court has federal question jurisdiction over the lawsuit under the Truth in Lending Act pursuant to 15 USC § 1640(e), and, 28 USC §§ 2201 and 2202. The Court has supplemental jurisdiction under 28 USC § 1367 over Plaintiff's state law claims because

said claims are related to the claims within the Court's original jurisdiction that they form

a part of the same case or controversy under Article 3 of the United States Constitution.

2.   Venue in this District is proper because all or substantial part of the events or ommissions

giving rise to Plaintiff's claims occurred in Queens County, New York.

3.   Plaintiff is an individual who resides in Queens County, New York.

4.   Defendant New York Motor Group, LLC is a limited liability company organized under

the laws of the State of New York with it's principal office at 60-20 Northern Boulevard,

Woodside, NY 11377.

5.   Defendant Santander Consumer USA Holdings, Inc., also known as Santander USA

Holdings, Inc., is a consumer finance corporation organized under the laws of the State of

Texas with it's principal office at 1601 Elm Street, Suite 800, Dallas, Texas 75201 and

it's principal address for correspondence at P.O. Box 961245, Fort Worth, Texas 76161-

1245. Santander Consumer USA Holdings and/or Inc. Santander Holdings USA, Inc. is a

wholly-owned subsidiary of the Santander Group and parent company of Santander Bank.

Santander Group, Santander Consumer USA Holdings, Inc. and Santander Bank are

authorized to conduct business in the State of New York. Santander Bank has a banking

branch located at 89-01 Northern Boulevard, Jackson Heights, NY, 11372.

6.   Defendant Mamdoh El Touby is an individual who resides and/or does business in New

York State.  Upon information and belief, he owns New York Motor Group, located at

60-20 Northern Boulevard, Woodside, New York 11377.

7.   Defendant Julio Estrada (a/k/a Jay Torres, a/k/a John DeSantos) is an individual who

resides at 112 Knob Hill Road, Hackettstown, New Jersey  07840. Upon information and

belief, he was employed at New York Motor Group, LLC until or through December

2013.

8.     Defendant(s) "Alex" and other John Does are individuals who reside and/or conduct business in New York State. Upon information and belief, all are employed by New York Motor Group, LLC located at 60-20 Northern Boulevard, Woodside, NY 11377.

### B.     STATEMENT OF FACTS

9.     In January 2013, Mr. Ahmed went to New York Motor Group, LLC seeking to purchase a 2010 Honda Accord ("vehicle"), advertised on the seller's website and on the used auto lot for $11,995.00. A photograph of the vehicle with the advertised price is attached as **Exhibit A**.

10.     Mr. Ahmed is inexperienced with the process for buying cars, whether new or used.

11.     Mr. Ahmed had $10,000.00 cash as a payment for a used vehicle.

12.     A sales associate, the John Doe identified as "Alex," informed Mr. Ahmed that the **only** way to purchase a vehicle in the State of New York is financing or auto loans, which is not true. "Alex" also stated that a cash down payment of $10,000.00 was not usually made in a single payment.

13.     An unknown employee and Alex ushered Mr. Ahmed into the small office building on the auto sales lot. Mr. Ahmed was shown to a sitting area and told to wait while they spoke with a sales manager about his down payment and purchase. Mr. Ahmed was made to wait for a few hours while being told by Alex and the unknown employee that the sales manager is working on other financing matters, but should be with him shortly. After a few more hours, Mr. Ahmed was informed that the sales manager had left the sales lot and they are not sure if he will return for the remainder of the business day.

14.   Because Mr. Ahmed had to secure his taxi before beginning his shift, and, in order to not be late for said shift, he informed Alex that he had to leave shortly.  Alex informed Mr. Ahmed that he would accept a partial down payment from him "to secure the vehicle." Therefore, on January 6, 2013, Mr. Ahmed made a single payment of $4,000.00 (receipt, attached hereto as **Exhibit B**).  Mr. Ahmed was told to return the next day to finalize the terms of the financing agreement.

15.   Mr. Ahmed was told that upon acceptance of his down payment, he would have to sign a sales contract as a part of the process for obtaining financing for the vehicle. Subsequently, he was induced into signing and initialing a **blank** sales contract. "Subject to Primary Lender Approval" and "Must Finance With New York Motor Group Banks" did not appear on the sales contract subsequently dated January 6, 2013 (attached herein as **Exhibit C**).

16.   On January 8, 2013, Mr. Ahmed returned to New York Motor Group to complete the process of financing the purchase of the vehicle and paid the remaining $6,000.00 cash down payment.  Mr. Ahmed demanded a receipt for the payment of the $6,000.00 and was given a "receipt" on letter head for Planet Motor Cars, Inc. (used auto dealership also owned by Mr. El Touby) which detailed his total down payment amount ($10,000.00), the sales price of the used vehicle, the balance to be financed, and other fees and finance charges. The total balance to be financed was $2,645.00.   The calculated monthly payment was $220.42 to be paid over a period of 12 months.

17.   Once again, Mr. Ahmed was made to wait for several hours at New York Motor Group before finally sitting with Alex, and, subsequently, the Sales Manager, identified as Julio Estrada.  Mr. Ahmed alleges that the retail installment contract he initially reviewed was

4

not the version he was induced to sign. After several minutes of "printing errors," Mr. Ahmed was induced into signing several retail installment contracts that were blank. Alex then took the "stack" of contract(s) and pointed to the pages and areas where Mr. Ahmed's signature was needed. Mr. Ahmed signed as indicated, while acknowledging to Alex that the entire process was stressful and confusing.

18.   After signing where Alex indicated, the retail installment contract(s) were "separated" and Mr. Ahmed was told that he would receive his copy in the mail once all the "numbers had been filled in," which was not true. Mr. Ahmed did not receive a copy of this contract or any other paperwork from New York Motor Group until July 24, 2013 when New York Police Department officers were called to the address, cleared the office, and had the sales manager, Julio Estrada pull all files with Mr. Ahmed's documents. A copy of the police report is attached as **Exhibit D**.

19.   The retail installment contract has an 18.95% APR and finance charges totaling $10,810.84. The amount financed is $15,575.00. The retail installment contract details the total dollar amount of payments as $26,385.84. The total financed cost of the 2010 Honda Accord, including a $6,000.00 (not $10,000.00) down payment, is $32,365.84. A copy of the retail installment contract, as described above, is attached as **Exhibit E**.

20.   In March 2013, Mr. Ahmed contacted Santander Consumer USA Holdings, Inc. to inform them that the amount financed was not correct. He was told to contact the dealership to discuss such errors, not the lender. Mr. Ahmed subsequently spoke with a Supervisor in Customer Service and informed her of the error and asked for a copy of any documents the dealership may have submitted. The Supervisor told Mr. Ahmed that the lender is not allowed to send those documents to him and that he would need to contact the dealership.

21.    Mr. Ahmed went to New York Motor Group to on several occasions between March 2013 and July 24, 2013.  In April 2013, Mr. Ahmed was told by an unknown employee at the dealership to pay $650.00 in cash (for fees associated with "fixing" the "financing issues" with Santander Consumer USA Holdings, Inc.) and "everything will be fine."

22.    Mr. Ahmed's final attempt to get the dealership to either rescind the financing contract, or accept the return of the vehicle occurred on or about July 24, 2013, when he approached Julio Estrada to inform him of the fraud and theft of his down payment. An argument ensued, and Julio Estrada threatened to kill Mr. Ahmed.

23.    Mr. Ahmed's vehicle was repossessed and disposed of by Santander Consumer USA Holdings, Inc. February 26, 2014. A copy of The Explanation of Calculation of Surplus or Deficiency (dated March 9, 2014) is attached as **Exhibit F**.

24.    New York Motor Group failed to respond to a Summons and Complaint filed in the Civil Court of the City of New York, County of Queens (Index No. CV-024272-13-QU).  On May 13, 2014, an Inquest was held before Hon. Chereé Buggs.  The Court found that Mr. Ahmed "was taken advantage of" (Inquest, 10: 10-11). The judgment awarded to Mr. Ahmed was the amount that was financed, plus interest and fees from January 6, 2013.  A copy of the Inquest transcript is attached as **Exhibit G**.

25.    The retail installment sales contract for the purchase of the vehicle was assigned to Santander Consumer USA Holdings Inc.  through Santander Bank.  Under the terms of the retail installment sales contract, Santander Consumer USA Holdings Inc.  and Santander Bank are liable for all the claims and defenses that Mr. Ahmed could bring against New York Motor Group, LLC. Specifically, the retail installment contract states:

     NOTICE:  ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT

IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE
DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR
SERVICES OBTAINED PURSUANT HERETO OR WITH THE
PROCEEDS THEREOF.

26.    Also, Santander Consumer USA Holdings Inc., through Santander Bank is fully liable by
       ratification for the acts of New York Motor Group, LLC.  After the bank was made aware
       of the dealership's fraud via telephone calls from Mr. Ahmed, the bank continued to
       retain the benefits of the fraudulent conduct fruit, *i.e.*, Mr. Ahmed's payments and
       obligations from the fraudulent sale.

27.    Mamdoh El Touby, owner of New York Motor Group, LLC, is personally liable for the
       illegal conduct of this limited liability company ("LLC"), under the doctrine of piercing
       the corporate veil.  Upon information and belief, Mr. El Touby exercises dominance over
       the used car dealership, effectively dictating its actions, and, therfore, abuses the privilege
       of doing business in the LLC form to perpetrate a wrong or injustice.

28.    Mr. El Touby abuses the corporate structures of his various dealerships in order to
       perpetrate frauds.   For example, on information and belief, Mr. El Touby opens
       dealerships under a corporate structure.  The dealerships then commit fraud against the
       consumer from which Mr. El Touby benefits financially, but is shielded from liability.
       Furthermore, the dealerships are also shielded from the financial consequences of the
       fraudulent conduct because Mr. El Touby proceeds to simply close them and open new
       dealerships under new names. New York Motor Group, LLC has, prior to the filing of this
       Complaint, changed its name.   This does not alter the culpability of Mr. El Touby;
       accordingly, he is jointly and severally liable for all actions of New York Motor Group,

LLC.

29.     The listed misrepresentations are only by way of example and not by limitation.

30.     There may be altenate theories to this case, each of which leads to Defendants' liability, either no valid contract was formed, due to Defendants' fraudulent conduct, or an unenforceable contract was formed, in violation of federal and state laws, as the product of duress, which was procedurally and substantively unconscionable.


<u>COUNT 1</u>
**VIOLATIONS OF THE TRUTH IN LENDING ACT AND REGULATION Z**

31.     Plaintiff, Tareque Ahmed, repeats and re-alleges each and every allegation contained in the above paragraphs, herein set forth fully and at length.

32.     New York Motor Group, LLC, Santander Consumer USA Holdings Inc., and Santander Bank regulary extended or offered to extend the consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in at least 72 installments.

33.     Within the meaning of TILA, 15 USC § 1602(f) and Regulation Z § 226.2(a)(17), New York Motor Group, LLC, Santander Consumer USA Holdings Inc., and Santander Bank are creditors.

34.     The purported contract lists a used motor vehicle (2010 Honda Accord, VIN 1HGCFP2F31AA015500), an article of personal property, as collateral.

35.     The purported contract is a written agreement payable in at least 72 installments.

36.     The purported contract is a consumer credit transaction within the meaning of the TILA, 15 USC § 1602, and Regulation Z § 226.2.

37.     The finance charge indicated on the purported contract exceeds $1,000.00.

38. Prior to the purported consummation of the contract, Plaintiff was not provided with the TILA disclosures in a form that he, as a consumer, could keep.

39. Plaintiff was not provided disclosures that confirm with the obligations detailed in TILA and Regulation Z.

40. The retail installment contract contains several "add-ons" that are, in fact, hidden finance charges.

41. The retail installment contract inaccurately lists the amount of the down payment as $6,000.00 instead of $10,000.00.

42. The TILA disclosures were not listed accurately; therefore, they should have been listed as "estimates."

43. New York Motor Group, LLC, Santander Consumer USA Holdings Inc., and Santander Bank violated 15 USC § 1638(a), (b) and Regulation Z §§ 226.17, 226.18.

44. WHEREFORE, Plaintiff demands and entry of judgment against New York Motor Group, LLC, Santander Consumer USA Holdings Inc., and Santander Bank for violating the Truth in Lending Act and Regulation Z, pursuant to 15 USC § 1640(a); statutory damages, costs and reasonable attorney's fees (should Plaintiff find it necessary to obtain legal counsel); rejection and/or revocation of acceptance, or, in the alternative, recission of the purported contracts for the sale of the vehicle; voiding, as necessary, any claimed security interests in the vehicle, and any further relief this Court deems appropriate.

## COUNT 2
### VIOLATIONS OF THE NEW YORK GENERAL BUSINESS LAW

45. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as though set forth fully and at length herein.

46. New York Motor Group, LLC, Santander Consumer USA Holdings Inc., and Santander Bank violated committed deceptive acts or practices and used false advertising within the meaning of N.Y. Gen. Bus. Law §§ 349(a) and 350.

47. New York Motor Group, LLC, Santander Consumer USA Holdings Inc., and Santander Bank knowingly and willingly engaged in materially misleading consumer-oriented conduct.

48. Plaintiff is a person who has been injured due to the deceptive acts or practices of New York Motor Group, LLC, Santander Consumer USA Holdings Inc., and Santander Bank.

49. Plaintiff brings his suit pursuant to N.Y. Gen. Bus. Law §§ 349(h) and 350-e.

49. Plaintiff seeks to enjoin the deceptive acts or practices of New York Motor Group, LLC, Santander Consumer USA Holdings, Inc., and Santander Bank.

51. WHEREFORE, Plaintiff demands entry of judgment against New York Motor Group, LLC, Santander Consumer USA Holdings, Inc., and Santander Bank for actual, treble, exemplary and punitive damages, attorney's fees (should Plaintiff find it necessary to obtain legal counsel), costs and injunctive relief; rejection and/or revocation of acceptance, or, in the alternative, rescission of the purported contracts for the sale of the vehicle; and, any further relief this Court deems appropriate.

### COUNT 3
## VIOLATIONS OF THE NEW YORK UNIFORM COMMERCIAL CODE

52. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as though set forth fully and at length herein.

53. After several conversations with the auto-loan lender Santander Consumer USA

Holdings, Inc. and several in-person meetings with personnel at New York Motor Group, LLC (from late February 2013 to July 2013), on or about July 24, 2013, Plaintiff rejected and revoked his acceptance of the vehicle and the auto loan. Plaintiff made a "request," a "request for accounting," and/or a "request regarding a statement of account" within the meaning of NY UCC § 9-210 to New York Motor Group, LLC, Santander Consumer USA Holdings, Inc., and Santander Bank regarding the discrepancies in the financed dollar amount of the auto loan regarding the used 2010 Honda Accord (VIN 1HGCP2F31AA015500).

54.   Pursuant to NY UCC § 9-210, New York Motor Group, LLC, Santander Consumer USA Holdings, Inc., and Santander Bank were all required to provide specific responses as to the interest claimed in the vehicle, the basis of the assertion, and an authenticated statement detailing the accounting, within 14 days of the demand.

55.   New York Motor Group, LLC, Santander Consumer USA Holdings, Inc., and Santander Bank all failed to comply with the statutory requirements in the manner or within the time required by law.

56.   WHEREFORE, Plaintiff demands entry of judgment against New York Motor Group, LLC, Santander Consumer USA Holdings, Inc., and Santander Bank for actual and statutory damages pursuant to NY UCC §§ 2-711 and 9-625; and, the rejection and/or revocation of acceptance, or, in the alternative, rescission of the purported contracts for the sale of the vehicle; and, any further relief this Court deems appropriate.

## COUNT 4
## FRAUD

57.   Plaintiff repeats and re-alleges each and every allegation contained in the above

paragraphs as though set forth fully and a length herein.

58. On January 6, 2013 and January 8, 2013, employees of New York Motor Group, LLC, including individual Defendants Mamdoh El Touby, Julio Estrada, and Alex made material and false representations about, but not limited to, the sales price and the financing terms. When they made the representations, the knew them to be false, or made the representations recklessly, as a positive assertion, and without knowledge of the truth. Further, they made the representations with the intent that they be relied upon. Those representations were, in fact, relied upon, subsequently damaging Plaintiff.

59. Santander Consumer USA Holdings, Inc., and Santander Bank ratified the fraudulent acts of New York Motor Group, LLC by retaining the fruits of the fraud of New York Motor Group, LLC.

60. As a result of the fraudulent acts of New York Motor Group, LLC, no valid contract was ever formed between Plaintiff and either New York Motor Group, LLC, Santander Consumer USA Holdings, Inc., and Santander Bank.

61. Plaintiff seeks actual, exemplary and punitive damages for these acts.

62. WHEREFORE, Plaintiff demands entry of judgment against New York Motor Group, LLC, Santander Consumer USA Holdings, Inc., and Santander Bank and the individual defendants for actual and statutory damages, exemplary and punitive damages, attorney's fees (should Plaintiff find it necessary to obtain legal counsel), costs, and injunctive relief; rejection and/or revocation of acceptance, or, in the alternative, rescission of the purported contracts for the sale of the vehicle; and, any further relief this Court deems appropriate.

## COUNT 5
## BREACH OF CONTRACT

63.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as though set forth fully and at length herein.

64.    In the alternative, if a valid contract was formed, New York Motor Group, LLC breached the contract by failing to procure a service contract and VSI insurance, as promised, and by breaching the implied duty of good faith and fair dealing.

65.    WHEREFORE, Plaintiff demands entry of judgment against New York Motor Group, LLC, Santander Consumer USA Holdings, Inc., and Santander Bank for actual and statutory damages, exemplary and punitive damages, costs and injunctive relief; rejection and/or revocation of acceptance, or, in the alternative, rescission of the purported contracts for the sale of the vehicle; and, any further relief this Court deems appropriate.

## COUNT 6
## CRIMINAL THREATS AND HARASSMENT (AGAINST DEFENDANT JULIO ESTRADA)

66.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as though set forth fully and at length herein.

67.    Julio Estrada (a/k/a Jay Torres, a/k/a John DeSantos), an employee of New York Motor Group, LLC on July 24, 2013, intentionally caused harmful or offensive conduct with Plaintiff's person when he told the Plaintiff to "Go fuck yourself.," called the Plaintiff a "piece of shit" and threatened to kill the Plaintiff.   The Defendant not only verbally assaulted, harassed and threatened to kill Plaintiff, he hand-wrote such statements.

68.    WHEREFORE, Plaintiff demands entry of judgment against Julio Estrada (a/k/a Jay Torres, a/k/a John DeSantos) for actual damages, and any further relief this Court deems appropriate.

## JURY DEMAND

69.   Plaintiff demands trial by jury.

## PRAYER

70.   For these reasons, Plaintiff demands judgment against New York Motor Group, LLC, Santander Consumer USA Holdings, Inc., and Santander Bank for the following:

a)   The above-referenced relief requested;

b)   Rejection/revocation of acceptance of the purported contract for the sale of the vehicle, or, in the alternative, rescission of the purported contract.

c)   Actual damages;

d)   Statutory damages;

e)   Treble, exemplary, and punitive damages;

f)   Attorney's fees and expenses (should Plaintiff find it necessary to obtain legal counsel)

g)   Costs of court;

h)   Prejudgment and post-judgment interest as allowed by law;

i)   Costs of suit;

j)   General relief;

k)   An injunction preventing Defendants from engaging in similar unlawful conduct now and in the future;

l)   A declaratory judgment as to the obligations and ownership interests of the parties as the the payments for the subject vehicle, including those

payments remaining as a result of the the repossession and sale of subject vehicle;

m)   All other relief, in law and in equity, both special and general, to which Plaintiff may be justly entitled.

Respectfully submitted,

Tareque Ahmed,
Plaintiff/Pro Se Litigant
31-78 34th Street, Apt. 4D
Astoria, New York 11106
Tel. 646.388.4379

# EXHIBIT A



# EXHIBIT B

NO. 495618

**NOTES**

# RECEIPT

DATE 1/6/15    NO. 495618

RECEIVED FROM Tareque Ahmed

ADDRESS _____ $ 4,000

FOR 2010 Honda Accord 4d    Alex is Salesman

| ACCOUNT | | HOW PAID | | |
|---|---|---|---|---|
| AMT. OF ACCOUNT | | CASH | 4,000 | 00 |
| AMT. PAID | | CHECK | | |
| BALANCE DUE | | MONEY ORDER | | |

©2001 REDIFORM 3 #1008

# EXHIBIT C

# New York Motor Group

60-20 Northern Blvd. • Woodside, New York 11377
Phone (718) 426-3500 • Fax (718) 426-4500
www.newyorkmotorgroup.com

**BUYERS NAME** AHMED TAREQUE          **DATE** 01.06 /13

**ADDRESS** 31-78 34 ST 4D LONGISLAND CITY NY    **ZIP** 11106

**RESIDENCE PHONE** 646-388-4379  **BUSINESS PHONE**       **SALESPERSON** ALEX

**PLEASE ENTER MY ORDER FOR ONE** ☐ NEW ☑ USED   2010 HONDA   **BODY TYPE** 4DR

**EXT. COLOR** BLUE  **MODEL** AccoRD G  **INT. TRIM** CloTH  (YEAR AND MAKE)  **STK. NO.**   **MILES** 34114

**CUSTOMER #**   **DEAL #**   V/N 1 H G C P 2 F 3 1 A A 0 1 5 5 0 0

"**Estimated Delivery Date** _____ / **Place of Delivery** _____ York 1133 "**If the vehicle is not delivered in accordance with this agreement within 30 days after the estimated delivery date and the delay is not attributable to you, you have the right to cancel this agreement and to receive a full refund of your deposit."

**PRIOR USE CERTIFICATION (V.T.L. 417-A)**
The principal prior use of this vehicle was as: a police vehicle ____, a driver education vehicle ____, or a rental vehicle ____ (taxicab) ____.

**IMPORTANT NOTICE TO USED CAR BUYER**
(A) STATE LAW REQUIRES THAT SELLER OF SECOND HAND CARS CERTIFY IN WRITING TO THE BUYER THAT EACH CAR IS IN SAFE CONDITION AT THE TIME OF SALE.
(B) THIS CERTIFICATION IS A GUARANTEE THAT THE CAR IS IN SAFE CONDITION AT THE TIME OF SALE.
(C) YOU HAVE A RIGHT TO REQUEST THE DEALER TO REPAIR OR TO PAY IN FULL FOR REPAIRS OF ANY UNSAFE CONDITION IN THE CAR WHICH DOES NOT COMPLY WITH THIS CERTIFICATION
(D) THIS BUSINESS IS LICENSED BY THE DEPARTMENT OF CONSUMER AFFAIRS, 42 BROADWAY, NEW YORK, NEW YORK 10004, COMPLAINT PHONE: DIAL 311

THIS AGREEMENT SHALL BE INTERPRETED UNDER AND GOVERNED BY THE LAWS OF THE STATE OF NEW YORK, AND IN THE EVENT OF LITIGATION, HEREUNDER, SAME SHALL BE INSTITUTED ONLY IN A COUNT OF COMPETENT JURISDICTION IN THE STATE OF NEW YORK, COUNTY OF QUEENS, WHERE THE DEALER HAS ITS MAIN OFFICE.

**SELLING PRICE** $ 11500

SUBJECT TO PRIMARY LENDER
APPROVAL MUST FINANCE WITH
NEW YORK MOTOR GROUP BANKS

Manager's special   11995

**CUSTOMER REQUESTED DEALER INSTALLED EQUIPMENT AND ACCESSORIES**

IMPORTANT NOTICE TO BUYER: If you are entitled to a refund under section 198-b of the General Business Law the dealer may, instead of returning your trade in, pay you its wholesale value determined by reference to the National Auto Dealers Association Used Car Guide or another guide approved by the commissioner of motor vehicles, adjusted for mileage, improvements and major physical / mechanical defects, and not the value listed in this contract.

By signing this contract I acknowledge that I have been advised that NEW YORK MOTOR GROUP will not be responsible for any payments claimed to have made, including deposits, unless the payment is made payable to NEW YORK MOTOR GROUP and I have received a receipt on an NEW YORK MOTOR GROUP official

I hereby acknowledge and understand that the payment made with Personal or Company check will not be refunded unless the copies of the canceled check is provided to NEW YORK MOTOR GROUP.

FACTORY ORDERED VEHICLE-DEPOSITS ARE NONREFUNDABLE ON FACTORY ORDERED VEHICLES ONCE VEHICLE HAS BEEN ORDERED.

IF THIS CONTRACT IS CANCELLED BY ME WITHOUT YOUR CONSENT, I UNDERSTAND I SHALL BE LIABLE TO YOU FOR LIQIDATED DAMAGES IN ACCORDABCE WITH PARAGRAPH FIVE (5) ON REVERSE SIDE.

**DESCRIPTION OF TRADE-IN**

| | | |
|---|---|---|
| YEAR | MAKE | MODEL |
| TYPE | VIN NO. | |
| COLOR | MILEAGE | TITLE NO. |
| TRADE-IN DATE | | |
| LESS BALANCED OWED | | |
| NET TRADE-IN ALLOWANCE | | |

IS THE TRADE-IN VEHICLE BRANDED ☐ YES ☐ NO CUSTOMER INITIALS * TA

BRANDED VEHICLE: A BRANDED VEHICLE IS ONE THAT STATES ON THE CERTIFICATE OF TITLE ONE OF THE FOLLOWING BRANDS (RECONSTRUCTED, NON-USA-STD., EXCEEDS MECHANICAL LIMITS, NOT ACTUAL MILEAGE OR WARRANTY NON-CONFORMITY). SUCH BRANDED TITLES AFFECT THE TRADE-IN PRICE OR THE ACCEPTANCE OF THE VEHICLE AS A TRADE-IN.

If financing for this transaction is arranged by Dealer, the Purchaser should be aware that Dealer is a creditor only for purpose of disclosure under the Consumer Credit Protection Act. The loan will be assigned immediately to ________ which will be the creditor and to whom Purchaser will actually be obligated. The annual percentage rate and other terms of payment for the amount financed will be as stated in a separate non NEW YORK MOTOR GROUP retail instalment contract signed by Purchaser.

Amount Financed $

**SPECIAL NOTICE TO CONSUMER**

IF UNDER THE LAW OF THE STATE OF NEW YORK CONTROLLING THE SALE OF USED MOTOR VEHICLES, YOU SHOULD BE ENTITLED TO A REFUND IN CONNECTION WITH THIS TRANSACTION, THE VALUE OF ANY VEHICLE YOU MAY HAVE TRADED-IN (IF THE SELLER CHOOSES NOT TO RETURN IT TO YOU) SHALL NOT BE THE VALUE LISTED IN THE DOCUMENT, INSTEAD, THE VALUE WILL BE DETERMINED BASED ON THE NATIONAL AUTO DEALERS ASSOCIATION USED CAR GUIDE WHOLESALE VALUE OR OTHER GUIDE APPROVED BY THE COMMISSIONER OF MOTOR VEHICLES, AND ADJUSTED FOR MILEAGE, IMPROVEMENTS AND ANY MAJOR PHYSICAL OR MECHANICAL DEFECTS.

*IF YOU AGREE TO ASSIST ME IN OBTAINING FINANCING FOR ANY PART OF THE PURCHASE PRICE, THIS ORDER SHALL NOT BE BINDING UPON YOU OR ME UNTIL ALL OF THE CREDIT TERMS ARE PRESENTED TO ME IN ACCORDANCE WITH REGULATION "Z" (TRUTH-IN-LENDING) AND ARE ACCEPTED BY ME. IF I DO NOT ACCEPT THE TERMS WHEN PRESENTED, I MAY CANCEL THIS ORDER AND MY DEPOSIT WILL BE REFUNDED.*

USED VEHICLE DISCLOSURE STATEMENT - THE INFORMATION BUYER SEES ON THE F.T.C. WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

| | |
|---|---|
| SUB TOTAL * TA | 11995 |
| CUSTOMER REQUESTED DEALER INSTALLED EQUIPMENT AND ACCESSORIES | |
| | + |
| | + |
| | + |
| LOAN PROCESSING FEE | |
| ANTI THEFT WINDOW ETCHING (BASIC PLAN) | |
| TOTAL PRICE OF VEHICLE | |
| LESS TRADE-IN CREDIT | |
| TOTAL TAXABLE AMOUNT | |
| SALES TAX % | |
| LUXURY TAX | |
| DEALER'S OPTIONAL FEE FOR PROCESSING APPLICATION FOR REGISTRATION AND/OR CERTIFICATE OF TITLE | 75 0 |
| APPROX. NET PAT-OFF ON TRADE-IN | |
| NYS INSPECTION | |
| TOTAL PRICE OF VEHICLE | |
| DEPOSIT (MINIMUM 10%) ASK FOR SEPARATE RECEIPT | |
| ADD DEPOSIT * TA | 00 |
| TOTAL | |
| AMOUNT FINANCED | |
| CERTIFIED OR CASHIERS CHECK OR CASH C.O.D. * TA | 4000 |
| ADDITIONAL TO C.O.D. ESTIMATED M.V. FEES | 75 |

I AGREE THAT THIS CONTRACT INCLUDES ALL OF THE TERMS AND CONDITIONS ON BOTH THE REVERSE SIDE AND THIS SIDE, THAT THIS CONTRACT CANCELS AND SUPERSEDES AN AGREEMNT AS OF THIS DATE AND THIS CONTRACT SHALL NOT BECOME BINDING UNTIL ACCEPTED BY YOU OR YOUR AUTHORIZED MANAGER. NEW PLATES WILL NOT BE OBTAIN VEHICLE IS PAID FOR IN FULL. I ACKNOWLEDGE THAT BY MY SIGNATURE ON THIS CONTRACT THAT I HAVE READ ITS TERMS AND CONTITONS AND HAVE RECIEVED A COMPLETED COPY. I ALSO CERTIFY THAT I AM OF LEGAL AGE TO EXECUTE BINDING CONTRAC CONTRACT. SEE REVERSE SIDE FOR ADDITIONAL TERMS. I CERTIFY I HAVE NOT SIGNED ANY BLANK FORMS. I ALSO CERTIFY THAT I AM OF LEGAL AGE TO EXECUTE BINDING CONTRAC STATE. CUSTOMER HEREBY AUTHORIZES AND ACKNOWLEDGES ALL INCENTIVES AND REBATES, ETC. ARE ASSIGNED TO NEW YORK MOTOR GROUP. THIS CONTRACT IS NOT CANC UNLESS CREDIT APPROVAL IS NOT OBTAINED WITH 10 DAYS, OR UNLESS CUSTOMER PAYS A CANCELLATION FEE EQUAL TO THIRTY FIVE PERCENT OF PURCAHSE PRICE.

* [signature] ________ ACCEPTED BY: ________

BUYER'S SIGNATURE DATE ACCEPTED BY DEALER ON HIS AUTHORIZED MANAGER

N.Y.S. LIC # 7112202 • NYC DCA LIC # 1404263

TO RE-ORDER CALL DP SALES DIST IT
THE PRINTER MAKES NO WARRANTY, EXPRESSED OR IMPLIED, AS TO C FITNESS FOR PURPOSE OF THIS FORM, CONSULT YOUR OWN LEGA

# EXHIBIT D



**VERIFICATION OF CRIME/
LOST PROPERTY**
PD 542-081 (Rev. 09-06)

# Do Not Detach — Submit In Duplicate

Complainant/Victims will be sent verification free of charge, other applicants must send a non-refundable processing fee of $15.00 (Check or Money Order – NO CASH) payable to the NYC Police Department with each application. All applicants must enclose a stamped self-addressed envelope. Please mail requests to: New York City Police Department, Criminal Records Section (Verification Unit), 1 Police Plaza, Room 300, New York, NY 10038.

Complaint Number: **4681**  Precinct of Report **108 PRECINCT**  FOR USE BY CRIMINAL RECORDS SECTION

Mail Record To: **TAREQUE AHMED**

(Print or Type) **31-78. 34 ST #4D L.I.C. NY-11106**

Applicant's File No.

1. Exact location where crime / loss took place

2. Date reported to Police **07-24-13**  Time (if known) **5:05**  This report concerns: ☐ Crime  ☑ Other (describe)  ☐ Lost Property

3. Full name and address of complainant/victim as reported to Police Department
**TAREQUE AHMED. 31-78. 34 ST #4D L.I.C. NY-11106**

Date and Time of Crime / Loss of Property (if different than date of report) DATE **7/24/13** TIME **4:55**  Name of officer who received your report, if known.

Any additional information which may aid in searching for your record

* **INSTRUCTIONS**: In order to find this record you MUST furnish all information requested above, particularly the complaint number and precinct of record (Occurrence). Verification of your request cannot be made without this information. The complaint number may be obtained by calling the precinct or detective squad concerned during the hours of 9 a.m. to 5 p.m. Do Not Detach — Submit In Duplicate.

Applicant's Signature  Date  Name and address of insurance company  Date

FOR POLICE DEPARTMENT USE ONLY

FOLLOWING IS A VERIFICATION OF THE ABOVE REQUEST

MOTOR VEHICLES

CURRENCY

JEWELRY

FURS – CLOTHING

FIREARMS

OFFICE EQUIPMENT

T.V., RADIOS, CAMERAS, ETC.

HOUSEHOLD GOODS

CONSUMABLE GOODS

MISCELLANEOUS

BRIEFLY DESCRIBE MANNER OF CRIME / LOSS OF PROPERTY / - *Harrassment /Threat / - Complainant stated that during a disagreement over price of a vehicle with perp, "Julio Estrada," perpetrator did tell the complainant to go fuck himself and if he didn't get out of his office he is going to kill him. These statements did cause the complainant to feel alarmed and fearful.*

Alarm No.  Report verified by (print title, name/sign) **C.A. Clark**  Date **SEP 04 2013**

Date: 7-24-1...

Welcome to _____
108 Precinct   5-47 50 Avenue LIC, NY 11101   (718) 784-5400/784-5431

(Command)            (Address)                                    (Telephone No.)

We hope that your business with us was handled satisfactorily. Your particular matter has been assigned the following number(s):

Complaint Report No.: 4681   Accident Report No.: _____   Aided Report No.: _____

Reported to: P.O./P.A.A. _____   Date of Occurrence: 1655   Time: 7-24-1...

(Rank)   (Name)              (Shield No.)

Location of Occurrence: 61st - NORTHERN BLVD.

Crime: HARASSMENT

Please keep this report should you have to refer to this matter in the future. If you need any further assistance feel free to contact us at telephone number (718) 784-5400 . Please let us know if you have any suggestions on how we can better serve you. As you may already know, we will provide you with a crime prevention survey of your residence or business. Please ask for more information on this and other crime prevention initiatives. Our goal is to make you and your property safe.

## COURTESY — PROFESSIONALISM — RESPECT

## REMEMBER: CALL "911" FOR EMERGENCIES ONLY!!!!



Place of Swift
Dutch Bro's
Ahmed Taregue by Julio Estrada

Place of Swift Hawwed

GO FUCK YOUR SELF

Julio Estrada
4:33 pm
914-621-6104

Capital one

# EXHIBIT E

RETAIL INSTALLMENT CONTRACT

SIMPLE FINANCE CHARGE

Dealer Number _____  Contract Number _____

| Buyer (and Co-Buyer) Name and Address (Including County and Zip Code) | Creditor - Seller (Name and Address) |
|---|---|
| TAREQUE AHMED<br><br>31-78 34 ST #4D<br>ASTORIA NY 11106 | Planet Motor Cars Inc<br>160-14 Hillside Avenue<br>Jamaica, NY 11432 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Seller (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used/Demo | Year | Make and Model | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|
| USED | 2010 | HONDA ACCORD | 1HGCP2F31AA015500 | ☑ personal, family or household<br>☐ business<br>☐ agricultural    ☐ _____ |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $ 3,000.00 is |
|---|---|---|---|---|
| 19.95 % | $ 10,910.84 | $ 15,575.00 | $ 26,385.84 | $ 29,385.84 |

Insurance. You may buy the physical damage insurance this contract requires (see back) from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit unless the box indicating Vendor's Single Interest Insurance is required is checked below. Your decision to buy or not buy other insurance will not be a factor in the credit approval process.

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

### Your Payment Schedule Will Be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | 366.47 | Monthly beginning 02/22/2013 |

Or As Follows:

Check the box below and sign below:

**Optional Credit Insurance**

☐ Credit Life:   ☐ Buyer  ☐ Co-Buyer  ☐ Both
☐ Credit Disability (Buyer Only)

Premium:

Credit Life $ _____ N/A
Credit Disability $ _____ N/A
Insurance Company Name _____

Home Office Address _____

Late Charge. If payment is not received in full within ___10___ days after it is due, you will pay a late charge of $ ___1.00___ or ___5___ % of the part of the payment that is late, whichever is ___greater___.

Prepayment. If you pay off all your debt early, you will not have to pay a penalty.

Security Interest. You are giving a security interest in the vehicle being purchased.

Additional Information: See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item 4A of the Itemization of Amount Financed. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

### ITEMIZATION OF AMOUNT FINANCED

| | | | |
|---|---|---|---|
| 1 Cash Price (including $ 1,730.17 sales tax) | | $ 21,225.00 | (1) |
| 2 Total Downpayment = | | | |
| Trade-In _____ | | | |
| (Year)   (Make)   (Model) | | | |
| Gross Trade-In Allowance | $ N/A | | |
| Less Pay Off Made By Seller | $ N/A | | |
| Equals Net Trade In | $ 0.00 | | |
| + Cash | $ 3,000.00 | | |
| + Other | $ N/A | | |
| Sub (If total downpayment is negative, enter "0" and see 4I below) | | $ 3,000.00 | (2) |
| 3 Unpaid Balance of Cash Price (1 minus 2) | | $ 15,225.00 | (3) |
| 4 Other Charges Including Amounts Paid to Others on Your Behalf | | | |
| (Seller may keep part of these amounts): | | | |
| A Cost of Optional Credit Insurance | | | |
| Paid to Insurance Company or Companies. | | | |
| Life | $ N/A | | |
| Disability | $ N/A | $ N/A | |
| B Vendor's Single Interest Insurance | | | |
| Paid to Insurance Company | $ | | |
| C Other Insurance Paid to the Insurance Company | $ N/A | | |
| D Fees Paid to Government Agencies | $ N/A | | |

**Other Insurance**

☐ _____
Type of Insurance _____ Term _____

Premium $ _____ N/A
Insurance Company Name _____

Home Office Address _____

| | | | |
|---|---|---|---|
| ...ment Taxes Not Included in Cash Price | $ | N/A | |
| Government License and/or Registration Fees | $ | N/A | |
| G Government Certificate of Title Fees | $ | 350.00 | |
| H Government Waste Tire Management Fee | $ | 0.00 | |
| I Other Charges (Seller must identify who is paid and describe purpose) | | 0.00 | |
| to            for Prior Credit or Lease Balance | $ | N/A | |
| to            for      Doc Fee | $ | 0.00 | |
| to            for | $ | N/A | |
| to            for | $ | N/A | |
| to            for | $ | N/A | |
| to            for | $ | N/A | |
| Total Other Charges and Amounts Paid to Others on Your Behalf | $ | 350.00 | (4) |
| 5  Amount Financed (3 + 4) | $ | 15,575.00 | (5) |

X _____ Date ____
Buyer Signature

X _____ Date ____
Co-Buyer Signature

**THIS INSURANCE DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE.**

☐ **VENDOR'S SINGLE INTEREST INSURANCE (VSI insurance):** If the preceding box is checked, the Creditor requires VSI insurance for the initial term of the contract to protect the Creditor for loss or damage to the vehicle (collision, fire, theft). VSI insurance is for the Creditor's sole protection. This insurance does not protect your interest in the vehicle. You may choose the insurance company through which the VSI insurance is obtained. If you elect to purchase VSI insurance through the Creditor, the cost of this insurance is $ _____ and is also shown in Item 4B of the ITEMIZATION OF AMOUNT FINANCED. The coverage is for the initial term of the contract

Returned Check Charge: You agree to pay a charge of $ __20__ if any check you give us is dishonored.

OPTION: ☐ You pay no finance charge if the amount financed, Item 5, is paid in full on or before _____, Year ____ . SELLERS INITIALS ____

### NO COOLING OFF PERIOD
State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

HOW THIS CONTRACT CAN BE CHANGED. This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding. Buyer Signs X _____ X _____ Co-Buyer Signs X _____
If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.
See back for other important agreements.
NOTICE TO BUYER: 1. Do not sign this agreement before you read it or if it contains any blank space. 2. You are entitled to a completely filled in copy of the agreement. 3. Under the law, you have a right to pay off in advance the full amount due. If you do so, you may, depending on the nature of the credit service charge, either (a) prepay without penalty or (b) under certain circumstances obtain a rebate of the credit service charge. 4. According to law, you have the privilege of purchasing the insurance on the motor vehicle provided for in this contract from an agent or broker of your own selection.
You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You confirm that you received a completely filled-in copy when you signed it.
### RETAIL INSTALMENT CONTRACT

Buyer Signs X _____ Date _____ Co-Buyer Signs X _____ Date ____
Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here X _____
Seller signs _____ Date _____ Address By X _____ Title _____

Seller assigns its interest in this contract to _____ (Assignee) under the terms of Seller's agreement(s) with Assignee.
(b) ☒ Assigned with recourse      santander consumer USA inc ☐ Assigned without recourse      ☐ Assigned with limited recourse

Seller _____ By _____ Title _____

ZAW FORM NO. 553-NY (REV 9/05)  U.S. PATENT NO. D460,782
©2005 Reynolds and Reynolds  www.reysource.com; 1-800-344-0996; fax 1-800-531-9055
THE PRINTER MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM, CONSULT YOUR OWN LEGAL COUNSEL.

CUSTOMER / TRUTH IN LENDING COPY

# EXHIBIT F

Santander Consumer USA, Inc.
P.O. Box 9105
Temecula, CA 92589-9105



2282288890

PRESORT
First-Class Mail
U.S. Postage and
Fees Paid
WSO

Send Payments to:
Santander Consumer USA, Inc.
P.O. Box 660633
Dallas, TX 75266-0633

Send Correspondence to:
Santander Consumer USA, Inc.
P.O. Box 981245
Fort Worth, TX 76161-1245

20140310-176

TAREQUE  AHMED
3178 34TH ST APT 4D
ASTORIA, NY 11106-1746





Santander Consumer USA
P.O. Box 961245
Fort Worth, TX 76161-1245
(888) 222-4227

## Explanation of Calculation of Surplus or Deficiency

Date: 03/09/2014

TAREQUE AHMED
3178 34TH ST APT 4D
ASTORIA, NY 11106-1746

Re:   Account No. 30000185600001000
      Retail Installment Sale or Credit Sale Contract dated 01/08/2013 ("Agreement")
      2010 // HONDA // Accord // VIN 1HGCP2F31AA015500 ("Vehicle")

Dear TAREQUE AHMED:

Please be advised that we disposed of the Vehicle on 02/26/2014.  The proceeds of the sale have been applied as explained below.  If you financed a premium for credit insurance under your Agreement, you may be entitled to a refund of any unearned portion of the premium.

| | | | | | |
|---|---|---|---|---|---|
| 1. | Aggregate unpaid balance of Agreement as of 03/09/2014 | | $16,551.07 | | |
| 2. | Rebate of unearned finance charges as of 03/09/2014, if any | - | $0.00 | | |
| 3. | Accrued and unpaid late fees | + | $94.10 | | |
| 4. | Net balance due (1 minus 2 plus 3) | | | = | $16,645.17 |
| 5. | Gross proceeds from the sale of the Vehicle | - | $10,500.00 | | |
| 6. | Subtotal after deducting proceeds of sale (4 minus 5) | | | = | $6,145.17 |
| 7. | Costs of retaking the Vehicle | | $385.00 | | |
| 8. | Costs of storing the Vehicle | + | $0.00 | | |
| 9. | Costs of preparing the Vehicle for sale | + | $0.00 | | |
| 10. | Costs of selling the Vehicle | + | $432.00 | | |
| 11. | Attorneys' fees and court costs | + | $0.00 | | |
| 12. | Other costs: | + | $0.00 | | |
| 13. | Total Costs (7 through 12) | | | = | $817.00 |
| 14. | Credit:  Rebate of unearned insurance premiums | | $0.00 | | |
| 15. | Credit: | + | $0.00 | | |
| 16. | Credit: | + | $0.00 | | |
| 17. | Total Credits  (14 through 16) | | | = | $0.00 |
| 18. | Balance due/surplus after sale (6 plus or minus 13, plus or minus 17) | | | = | $6,962.17 |



(The checked box applies to you).

☑ Deficiency balance for which you are liable and for which demand* is hereby made $6,962.17. **
☐ Surplus balance to be remitted to you $0.00. **
☐ Surplus balance paid to a subordinate party $0.00.**

**Future debits, credits, charges, finance charges or interest, rebates or other expenses may affect this amount.

If you need more information about the transaction, contact us: Santander Consumer USA, P.O. Box 961245, Fort Worth, TX 76161-1245, (888) 222-4227.

Sincerely,

Santander Consumer USA

* NOTICE:  If you are entitled to the protections of the United States Bankruptcy Code (11 U.S.C. §§ 362; 524) regarding the subject matter of this letter, the following applies to you:  THIS COMMUNICATION IS NOT AN ATTEMPT TO COLLECT A DEBT FROM YOU PERSONALLY IN VIOLATION OF THE BANKRUPTCY CODE AND IS FOR INFORMATIONAL PURPOSES ONLY.

SANTANDER CONSUMER USA IS A DEBT COLLECTOR UNLESS THE NOTICE ABOVE APPLIES TO YOU. THIS IS AN ATTEMPT TO COLLECT YOUR DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Santander Consumer USA can report information about your account to credit bureaus. Late payments, missed payments or other defaults on your account may be reflected in your credit report.

NORTH CAROLINA COLLECTION AGENCY INFORMATION:
Permit: 103708
Physical Address:
Santander Consumer USA
5201 Rufe Snow Drive
North Richland Hills, TX 76180



# EXHIBIT G

1

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF QUEENS                 PART 101
------------------------------------X
TAREQUE AHMED

                  Plaintiff,        Index No.
                                    CV-024272-13/QU
     -against-

NEW YORK MOTOR GROUP,         INQUEST

                  Defendant.
------------------------------------X


                May 13, 2014


B E F O R E:


           HONORABLE CHEREÉ A. BUGGS,
           Civil Court Judge


APPEARANCES:


           TAREQUE AHMED
           Plaintiff, Pro Se



           No Attorney for Defendant


ALSO PRESENT:


           ABDUS SAMAD, Official Bengali Interpreter




           EILEEN O'SHEA, Official Court Reporter

1      **AHMED vs. NY MOTOR GROUP**                    2

2            THE COURT:  This is an inquest in the matter

3      of Tareque Ahmed versus New York Motor Group.

4            I am going to have the officer to swear in

5      the Plaintiff.

6      **T A R E Q U E    A H M E D**, the Plaintiff herein, having been

7      first duly sworn, was examined and testified as follows:

8            THE COURT:  Please give us your name and

9      address.

10           THE WITNESS:  Tareque, T-A-R-E-Q-U-E, last

11     name Ahmed, A-H-M-E-D.

12           Address, 31-78 34th Street, Apartment 4D,

13     Astoria, New York 11106.

14           THE COURT:  May I have the appearance of the

15     court interpreter.

16           INTERPRETER:  Abdus Samad, official Bengali

17     interpreter.

18           THE COURT:  Mr. Ahmed, why did you bring

19     this action against New York Motor Group?

20           THE WITNESS:  I went there to purchase a

21     vehicle.  When I wanted to make the purchase, I

22     took this photograph to show it to my wife, who

23     was like seven months pregnant.  She was -- she

24     was -- the price, the price -- the $11,995, I

25     spoke with the salesperson whose name is Alex,

**AHMED vs. NY MOTOR GROUP**                              3

1
2      and I indicated my preference to pay cash.

3              And Alex told me that the car has to be

4      financed for whatever minimum amount there is.

5      Otherwise, you can't make the purchase.

6              On January 6th, it was a Sunday, I gave them

7      an advance of $4,000.  They gave me a receipt for

8      that.

9              THE COURT:  If there is evidence, you have

10     to give it to the Court Officer.

11             THE WITNESS:  On January 7th, they asked me

12     to come over, so my wife -- I went there at 10:00

13     a.m., and we were there all day.  And by 5:00

14     p.m., they told us that they couldn't process

15     this today.

16             So, they asked us to return on January 8th

17     at 10:00 a.m.  And, we went there, and we stayed

18     there all day.

19             So, on January 8th, I gave them another

20     $6,000.

21             So, they handed me this paper, which

22     indicates that I made the $10,000 deposit.  And,

23     the car's cost price, $11,995.

24             THE COURT:  Let me ask you a question:  Were

25     you prepared to pay the entire $11,995 in cash?

 AHMED vs. NY MOTOR GROUP                                    4

1

2          THE WITNESS:  Yes.

3          THE COURT:  Okay.  And they would not accept

4     that from you?

5          THE WITNESS:  No, they said at least $2,000

6     has to be financed.  And they said we worked with

7     the bank, with getting financing from the banks

8     if we couldn't show the banks something, we can't

9     sell you this car.

10         THE COURT:  Why didn't you just walk away

11    from that dealership and go to another dealership

12    who would accept your cash?  Because most car

13    dealerships would be more than happy to have you

14    pay all cash.

15         THE WITNESS:  Well, I had been to other

16    dealers, but for a 2010 Honda, I -- Honda Accord,

17    that has only 34,000 miles, I didn't get -- I

18    didn't see any other cars at this low price.

19         THE COURT:  I am still not clear.  You

20    haven't really gotten the point yet as to why you

21    are suing them.  This lawsuit is for $25,000.

22    What happened that was wrong to bring you to this

23    court?

24         THE WITNESS:  Well, the remaining balance

25    was $2,645, but from the bank, they -- they

AHMED vs. NY MOTOR GROUP                    5

received $15,225.

THE COURT:  What do you mean "they

received"?

THE WITNESS:  I mean, they made a loan in my

name for the amount.

THE COURT:  You -- did you sign that?

THE WITNESS:  Yes, I did.

THE COURT:  You are bound by the contract.

You shouldn't have signed it.

THE WITNESS:  What happened was, when I was

asked to sign this was a blank paper.  Nothing

was filled in and said we have to send to the

bank.  And the bank will return it to you.

That's what I was told.

THE COURT:  All the more reason you never

have -- never should have signed it.

THE WITNESS:  I haven't purchased vehicles

like that.  I don't understand the system over

here.

THE COURT:  May I see the documents that you

are referring to?

Be seated, sir, please.

The Court is looking at two documents; one

is a document or an invoice which has the name

1
2  Planet Motor Cars Incorporated on top of it,
3  160-14 Hillside Avenue, Jamaica, New York 11432.
4       Is this the company somehow associated with
5  the Defendant?  Because the Defendant in your
6  case is New York Motor Group, 16-20 Northern
7  Boulevard.
8       THE WITNESS:  When they were dealing with
9  me, these are the two types of names and
10 documents that they used.
11      THE COURT:  Where did you go physically?
12 Where was the physical office?  On Northern
13 Boulevard?
14      THE WITNESS:  On Northern Boulevard.
15      THE COURT:  Are you still paying for this
16 loan?
17      THE WITNESS:  I stopped paying.  When I
18 first received the bill for the first month,
19 actually, I called the bank.  And they said, you
20 should go to the dealership.
21      We went to the dealership.  I went along
22 with my wife, and she was eight months pregnant.
23 But, you know, they gave us the run-around.
24      After two days, they said, wait, we will fix
25 the paperwork for you.  And they said it takes at

**AHMED vs. NY MOTOR GROUP**                                      7

least 90 days to fix this type of problem.

So, pay now, and pay for the next three
months.

So, after four months, when I found that I
was getting the same bill and nothing new, so I
returned to them.

This was on June 18, 2013.

And then they collected $680 from me, and I
was told that we were even.  I didn't have to pay
them anything.

I believed them, and I left.  And then the
following month, I found that there was now twice
the amount, the bill.

THE COURT:  Do you still have the car, sir?

THE WITNESS:  No.

THE COURT:  What happened to the car?

THE WITNESS:  The bank repossessed the car
on January 7th, because I didn't pay in 2014.

THE COURT:  Are you still getting bills,
getting bills for the loan?

THE WITNESS:  No more bills at this time,
and they sold the vehicle.

I went there on July 18.  They asked me to
return on July 24th.

**AHMED vs. NY MOTOR GROUP**                                8

1
2          When I went there on July 24th, so June 24th
3      is when they collect all this paperwork from me,
4      and he had to -- I had to pay them $180.  And
5      they also cursed me a lot on that day.
6          And then the finance manager gave this to
7      me, and I was held by the scruff of my neck and
8      sort of pushed out of the dealership and said if
9      I returned, they would kill me.
10         And I called the police right away, and the
11     police wanted to know what the threat was that
12     was made to kill you, did you record that
13     statement.
14         I said, no, I didn't record that, but this
15     is the paper that they -- the paper that they
16     threw at me.  Police wanted to know if I had any
17     other evidence.
18         THE COURT:  All right.  I don't need any
19     more paper.
20         You may step down.
21         Thank you.
22         THE WITNESS:  Thank you so much.
23         THE COURT:  I will return all your documents
24     to you in a moment.  You may have a seat at the
25     table.

**AHMED vs. NY MOTOR GROUP**                                    9

1
2          The Court has heard the testimony of the
3     Plaintiff in this matter, Tareque Ahmed, who
4     testified that he went into the dealership on
5     Northern Boulevard to New York Motor Group on
6     address 60-20 Northern Boulevard, Woodside, New
7     York, in order to buy a 2010 Honda Accord.
8          The VIN number is 1HGCP2F31AA015500.
9          The Court has received into evidence three
10    documents, one from Planet Motor Cars, with the
11    amount of $15,575 being financed.
12         There is also the contract with the finance
13    company, which the Court is deeming to be
14    Plaintiff's 2 that he actually signed showing an
15    amount financed also of $15,575.
16         Mr. Ahmed, says that the form was blank at
17    the time that he signed it.
18         There is also a sales invoice from New York
19    Motor Group that the Court is deeming to be
20    Plaintiff's number 3, which indicates a selling
21    price of $17,500, but a manager's special of
22    $11,995.
23         And this regards to the same vehicle,
24    because it is the same VIN.  Nonetheless, this
25    vehicle, which was being sold for $11,995, was

**AHMED vs. NY MOTOR GROUP**                    10

financed despite the fact that the Plaintiff

wanted to pay cash alone for it.

Requiring a total number of payments of

$26,385.84, which also takes into account the

$10,000 that he paid already for the vehicle.

While it is the responsibility of the

purchaser to read what they are signing and

certainly not to sign a blank document, it is the

Court's belief that the Plaintiff was taken

advantage of in this case, and, as a consequence,

this Court will find for him for the amount that

was financed, which was $15,575 with interest

from January 6, 2013.  And that would constitute

the decision and Order of the Court.

The official decision will be available in

seven to ten days, Mr. Ahmed, and you can come

back in to the courtroom or into the room 147, in

order to get a copy of that official decision

which the employees of the court will give you

and give you some direction as to how you can

seek to collect on the judgment.

Thank you very much.  Have a good day.

(Whereupon, the matter was concluded.)

*     *     *

AHMED vs. NY MOTOR GROUP                              11

## CERTIFICATION

I, EILEEN O'SHEA, an Official Court Reporter of
the State of New York, do hereby certify that this
transcript is a true and accurate transcription of my
stenographic notes taken on this day.

EILEEN O'SHEA,
Official Court Reporter

## Queens County Civil Court
### Civil Judgment

| Plaintiff(s): | | | | | | |
|---|---|---|---|---|---|---|
| TAREQUE AHMED | | | | | | |

**Index Number:  CV-024272-13/QU**

Judgment Issued:  After Inquest

vs.

On Motion of:

Self Represented

Defendant(s):
NEW YORK MOTOR GROUP

| | | | | | | |
|---|---|---|---|---|---|---|
| Amount claimed | $15,575.00 | Index Number Fee | ' | $45.00 | Transcript Fee | |
| Less Payments made | $0.00 | Consumer Credit Fee | | $0.00 | County Clerk Fee | |
| Less Counterclaim Offset | $0.00 | Service Fee | | $25.00 | Enforcement Fee | $ |
| Interest    01/06/2013 at 9% | $1,924.05 | Non-Military Fee | | $0.00 | Other Disbursements | |
| Attorney Fees | $0.00 | Notice of Trial Fee | | $0.00 | Other Costs | |
| Cost By Statute | $200.00 | Jury Demand Fee | | $0.00 | | |
| **Total Damages** | **$17,499.05** | **Total Costs & Disbursements** | | **$315.00** | **Judgment Total** | **$17,8** |

The following named parties, addressed and identified as creditors below:

Plaintiff creditor(s) and address

(1) TAREQUE AHMED
31-78 34TH STREET, APT#4D, Astoria, New York 11106

Shall recover of the following parties, addresses and identified as debtors below:

Defendant debtor(s) and address

(1) NEW YORK MOTOR GROUP
6020 NORTHERN BLVD, Woodside, New York 11377

Judgment entered at the Queens County Civil Court, 89-17 Sutphin Boulevard, Jamaica, NY 11435, in the STATE OI
YORK in the total amount of **$17,814.05 on 05/23/2014 at 02:36 PM.**

Judgment sequence 1

*Carol Alt*

Carol Alt, Chief Clerk Civil Court